UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNETTE DUNCAN,

    Plaintiff,                                                     Civil Action No. 16-CV-12570

and                                                              HON. BERNARD A. FRIEDMAN

MCLAREN OAKLAND and
MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    Intervening Plaintiffs,

vs.

LIBERTY MUTUAL INSURANCE CO.,

    Defendant.
_____/

## OPINION ON REMAND

        This matter is presently before the Court on the Sixth Circuit's opinion and order "remand[ing] the action to the district court to consider whether the Estate has standing." *Duncan v. Liberty Mut. Ins. Co.*, 745 F. App'x 575, 578 (6th Cir. 2018).

*Background*

        Plaintiff is the personal representative of the estate of David Duncan who died in December 2014, approximately two years after he was severely injured in an automobile accident in January 2013. Defendant Liberty Mutual Insurance Company ("Liberty Mutual" or "defendant") is Duncan's no-fault insurer. In her second amended complaint ("SAC"), plaintiff asserts three claims. Count I is a breach of contract claim, in which plaintiff alleges that defendant has failed to pay personal injury protection ("PIP") benefits that are due under Duncan's insurance policy with

defendant and under Michigan's No-Fault Act,[1] plus costs, interest, and attorney fees. Count II seeks a declaration regarding the applicability of the No-Fault Act and the amounts due. And Count III seeks damages under the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b)(3), in the amount of twice what Medicare has conditionally paid.[2] As plaintiff alleges that "Medicare has conditionally paid $225,668.29[3] for medical services and items for Mr. Duncan's care arising out of the accident," SAC ¶ 29, she seeks double this amount, i.e., $451,336.58, on this count.

---

[1] Plaintiff alleges that defendant has paid $20,181.00 of the $173,461.10 bill from intervening plaintiff McLaren Oakland, where Duncan was hospitalized from January 13 to 28, 2013. SAC ¶ 23. On January 28, 2013, Duncan was discharged from the hospital to a sub-acute rehabilitation facility and then to a long-term care facility, where he died in December 2014. *Id.* ¶ 37.

[2] As Judge Berg explained in *Nawas v. State Farm Mut. Auto. Ins. Co.*, No. 13-11158, 2014 WL 4605601, at *3 (E.D. Mich. Sept. 15, 2014),

> [t]he Medicare Secondary Payer Act "designates certain private entities – such as a group health plan, a worker's compensation plan, or an automobile or liability insurance plan – as 'primary payers' that have the responsibility to pay for a person's medical treatment." *Id.* Under this Act, Medicare does not have to pay if payment for covered medical services has been or is reasonably expected to be made by a primary payer. *See id.*; 42 U.S.C. § 1395y(b)(2)(A). However, "[i]f the primary payer has not paid and will not promptly do so," Medicare is empowered to "conditionally pay the cost of the treatment." *Stalley*, 517 F.3d at 915; *see* 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare may then seek reimbursement for any conditional medical payments from the primary payer. *See Stalley*, 517 F.3d at 915; 42 U.S.C. § 1395y(b)(2)(B)(iii).
> In addition, "[t]he Medicare Secondary Payer Act also creates a private right of action, with double recovery, to encourage private parties who are aware of nonpayment by primary plans to bring actions to enforce Medicare's rights." *Stalley*, 517 F.3d at 916 (citing 42 U.S.C. § 1395y(b)(3)(A)).

[3] Of this total amount, plaintiff alleges that Medicare conditionally paid $58,229.22 to McLaren Oakland. *See* SAC ¶ 28. Presumably, the balance ($167,439.07) of Medicare's payments was paid to other medical care providers.

2

In March 2016, shortly before defendant removed the matter to this Court, a portion of the case was tried to a jury in Oakland County Circuit Court. Based on the jury's verdict, the state court entered a judgment in April 2016 to the effect that plaintiff's decedent "suffered an accidental bodily injury that arose out of the use or operation of a motor vehicle . . . that caused or contributed to his anoxic brain injury on January 11, 2013." Defendant concedes that "[s]tate court causation ha[s] been determined." Def.'s Mot. ¶ 5.

McLaren Oakland, where Duncan was hospitalized from January 13 to 28, 2013, has intervened as a plaintiff to obtain no-fault benefits for the medical services it rendered to Duncan. McLaren Oakland alleges that the total bill for these services is $173,203.10. Intervening Compl. ¶ 6. In response to plaintiff's motion for partial summary judgment, McLaren Oakland states that it seeks "$95,050.88 in outstanding bills, plus no-fault statutory interest and attorney fees." McLaren Oakland's Resp. ¶ 17. The difference between the original and the currently outstanding McLaren Oakland bills is $78,152.22, which is, approximately, the sum of $58,229.22 conditionally paid by Medicare and $20,181.00 paid by defendant.

Prior to the Oakland County jury verdict, defendant denied any liability for David Duncan's medical expenses (or other no-fault benefits) on the theory that his injuries were not caused by the car accident. Based on the opinions of its experts who reviewed the medical records, defendant argued that Duncan suffered a fatal heart attack while driving. After Medicare initially informed defendant that it was responsible for reimbursing Medicare for the "conditional payments" at issue in this case, defendant objected and it eventually succeeded in persuading Medicare to change its mind. In a letter to defendant dated June 19, 2015, Medicare stated that it had reversed its position on reimbursement and that Liberty Mutual owed Medicare "zero."

3

When the jury reached its verdict and the state court entered judgment thereon in April 2016, defendant promptly notified Medicare of this new development. This caused Medicare to reverse its position again. In a letter to defendant dated October 26, 2016, Medicare stated that defendant was, after all, responsible for reimbursing Medicare for its conditional payments. Defendant indicates that it accepts Medicare's position and is simply waiting for Medicare to present a final bill and that it "had set up an escrow into which monies were paid by Liberty Mutual for the direct purpose of providing for appropriate payment to the appropriate payees." Def.'s Supp. Br. (docket entry 57) at 7.

As noted, the state court jury returned its verdict in March 2016 and the state court entered judgment in April. On July 1, 2016, plaintiff amended her complaint to assert a MSPA double damages claim, and defendant removed the case based on this federal question.

***Cross Motions for Partial Summary Judgment***

Plaintiff and defendant filed cross motions for partial summary judgment on plaintiff's double damages claim (Count III) raising this issue: Has defendant "fail[ed] to provide for primary payment (or appropriate reimbursement)" under 42 U.S.C. § 1395y(b)(3)(A)? This Court, by denying plaintiff's motion and granting defendant's motion, answered this question in the negative. Defendant did not "fail to provide for primary payment" because it had a plausible argument as to why it was not liable under the no-fault policy. That argument, based on its experts' opinions, was strong enough to convince Medicare, which informed defendant in June 2015 that it owed Medicare "zero." Defendant eventually lost that argument when the Oakland County jury returned its verdict in March 2016. Defendant immediately informed Medicare of this development and it has accepted Medicare's position that it must, after all, reimburse Medicare for Medicare's

4

conditional payments. As noted, defendant has said that it will reimburse Medicare as soon as Medicare presents a final bill. Once defendant pays that bill, it will have made "appropriate reimbursement" – appropriate in the sense that it will be made in accordance with the statute and regulations, which permit Medicare to collect conditional payments directly from a "primary payer" such as defendant and for a primary payer to contest liability and the amounts at issue.

Defendant's behavior saves it from liability for double damages. The double damages provision is intended as an incentive for a beneficiary or a medical care provider or Medicare itself to sue an insurer who wrongfully fails to pay under a healthcare or no-fault or liability policy. A beneficiary who succeeds with such a suit pays half of the recovery back to Medicare (thereby saving the government the time and expense of this collection effort), while the beneficiary keeps the other half as his/her reward for playing the role of "private attorney general." But the double damages statute may not be used against an insurer, such as defendant in the present case, who has a legitimate defense to liability – particularly when, as here, Medicare itself is persuaded, at least at the outset, that the defense has merit. Double damages are all the more inappropriate against an insurer who, as here, agrees to repay Medicare once its liability has been established.[4]

---

[4] This result comports with a number of cases that have indicated that double damages liability under the MSPA should apply only when the insurer has acted unreasonably in denying the underlying claim. *See, e.g., Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 529 (4th Cir. 2018) (suggesting that some level of "recalcitrance" by the insurer must be present to support a MSPA double damages claim); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 525 (8th Cir. 2007) (suggesting that such claims are meant for "recalcitrant insurer[s]"); *Bio-Medical Applications of Tenn., Inc. v. Central States SE & SW Areas Health & Welfare Fund*, 656 F.3d 277, 294 (6th Cir. 2011) (stating that "it is not harsh to impose such liability against entities who renege upon a pre-existing contractual arrangement to provide healthcare coverage"); *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 394 (2nd Cir. 2001) (stating that the statute "creates a private right of action for individuals whose medical bills are improperly

For these reasons, the Court concluded – in denying plaintiff's motion for partial summary judgment and granting defendant's motion for partial summary judgment – that defendant did not "fail to provide for primary payment (or appropriate reimbursement)" under 42 U.S.C. § 1395y(b)(3)(A). Defendant had no obligation to pay David Duncan's medical expenses under his no-fault policy because defendant had a legitimate defense, which Medicare initially accepted, namely, that Duncan's injuries were caused by his heart attack, not by the automobile accident. Once the jury decided the liability issue in plaintiff's favor, defendant accepted responsibility to reimburse Medicare for its conditional payments and, moreover, put money aside to make those payments. This is not a case of an insurer who, without a legitimate basis for doing so, has refused to pay a plainly meritorious claim. To the contrary, defendant appears to have acted completely within its rights. When Duncan was injured, defendant promptly notified Medicare. When Medicare informed defendant that it was primarily responsible for Duncan's medical bills, defendant used the administrative appeal procedure and persuaded Medicare to change its mind. When the jury's verdict was returned, defendant again promptly notified Medicare. And when Medicare changed its mind based on that verdict, defendant agreed to pay and requested a final bill.

Plaintiff claims credit for forcing defendant to accept responsibility for reimbursing Medicare. Plaintiff asserts that defendant never would have agreed to pay if plaintiff had not brought the Oakland County lawsuit. This may be true, but it does not change the fact that (1)

---

denied by insurers and instead paid by Medicare"); and *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 669-70 (E.D. La. 2014) (noting that "a primary plan must fail to provide reimbursement in order to afford [plaintiff] the right to pursue double damages. Failure connotes an active dereliction of a duty, and the award of double damages is intended to have a punitive effect on plans who intentionally withhold payment.").

defendant was permitted to contest its liability under the no-fault policy; (2) defendant behaved appropriately in challenging administratively Medicare's initial decision to seek reimbursement for the conditional payments; and (3) once its liability was determined, defendant conceded its responsibility to reimburse Medicare.

Upon granting summary judgment for defendant on this claim, the Court remanded the remaining claims to state court pursuant to 28 U.S.C. § 1367(c)(3).

*Standing*

In its August 16, 2018, opinion, the Sixth Circuit remanded this matter for this Court "to consider whether the Estate has standing." The court of appeals explained:

> For standing, a plaintiff needs to show that "(1) [he or she] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ). The Supreme Court has stated that "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
>
> For injury-in-fact, there are two elements: the injury must be particularized and concrete. *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016). To be a particularized injury, "it must affect the plaintiff in a personal and individual way." *Id*. (quoting *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130). However, regardless of whether a plaintiff's injury is particularized, a plaintiff needs "some concrete interest that is affected by the deprivation." *Id.* at 1552 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)). "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. "Article III standing requires a concrete injury even in the context of a statutory

7

> violation." *Id*.
>
> In this particular action, determining whether the Estate has standing is a fact intensive question. *Compare Gucwa v. Lawley*, 731 F. App'x 408, 413-14 (6th Cir. 2018) (hypothesizing that a financial loss might show standing), *and Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 391 (2d Cir. 2001) (summarizing a plaintiff's argument that he received inferior health care), *with Netro v. Greater Balt. Med. Ctr., Inc.*, 891 F.3d 522, 526-28 (4th Cir. 2018) (stating that a beneficiary had standing because a state-court judgment required her to pay Medicare and she invoked a derivative injury). We have noted that "[a] plaintiff does not satisfy the elements of standing simply by showing that the insurer failed to make payments 'on [his] behalf'; the plaintiff must show that he '[him]self suffered an injury because a primary plan has failed' to pay." *Gucwa*, 731 F. App'x at 414 (second and third alterations in original) (quoting *Woods v. Empire Health Choice, Inc*., 574 F.3d 92, 101 (2d Cir. 2009)). Determining here, for instance, whether Duncan suffered financially or received less care because Liberty Mutual failed to provide primary payment requires fact finding. *See Gucwa*, 731 F. App'x at 413-14.
>
> In its review of the matter, the district court did not analyze whether the Estate has standing. *See* R. 67 (Order) (Page ID #4758). Accordingly, the district court did not make factual findings regarding whether Liberty Mutual injured the Estate by refusing to pay for Duncan's medical expenses and triggering Medicare's conditional payments. Because we do not have these findings before us, the district court should determine in the first instance this factually intensive question.

*Duncan,* 745 F. App'x at 577-78.

At the Court's direction, the parties briefed the standing issue. Having reviewed these briefs, and the additional exhibits submitted by plaintiff, the Court concludes that plaintiff has failed to show that she suffered any injury in fact from defendant's failure to pay David Duncan's medical bills. Those bills were paid conditionally by Medicare (and by Medicaid), and defendant has committed to reimbursing Medicare upon receiving a final bill.

Plaintiff's arguments to the contrary are unpersuasive. She first argues that she has standing under *Springer v. Cleveland Clinic Employee Health Plan Total Care*, 900 F.3d 284, 287

8

(6th Cir. 2018), which recognized standing because plaintiff, a healthcare plan participant, "was denied health benefits he was allegedly owed under the plan." Under *Springer*, plaintiff plainly has standing to sue defendant for breach of the automobile insurance policy at issue in this case. This claim is asserted in Counts I and II of the SAC, which are now being litigated in state court. But *Springer* does not show how plaintiff has standing to assert its MSPA claim, which is asserted in Count III. Each of plaintiff's claims "must independently meet the requirements for standing." *Kanuszewski v. Mich. Dept. of Health & Human Servs.*, No. 18-1896, 2019 WL 2417390, at *3 (6th Cir. June 10, 2019). Plaintiff's assertion that "[u]nder *Springer*, there is simply no doubt that Ms. Duncan [as representative of the Estate] has standing at the time of the first removal to this court," Pl.'s Br. at 18, PageID.5402, is correct only as to Counts I and II.

Plaintiff next argues that she has standing under *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018). In that case, plaintiffs sued a debt collector for sending them letters that misstated their rights under the Fair Debt Collection Practices Act ("FDCPA") to seek verification of the debts. Plaintiffs' only injury consisted of receiving the deficient notices, but the court found that this sufficed to demonstrate standing because the deficient notices, by themselves, "present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices," thereby threatening plaintiffs' rights to contest the debts. *Id.* at 757. This brought plaintiffs' claim within the category of cases recognized by the Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), "where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest." *Macy*, 897 F.3d at 756. That is to say, by

9

creating a private right of action under the FDCPA, Congress "plainly sought to protect consumers' concrete economic interests," *id.* at 757 (quoting *Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. 2017)), and plaintiffs had standing to protect this interest.

In the present case, by contrast, plaintiff has not shown that Congress, in creating a private right of action under the MSPA, sought to protect any "concrete economic interest" of individuals such as plaintiff. Rather, the clear purpose of this statute is to reduce the financial burden on Medicare by making it the secondary payer for the healthcare costs of those who are also covered by a "primary plan," such as a group health plan or automobile insurance policy. As the Eleventh Circuit has explained,

> [t]he MSP is actually a collection of statutory provisions codified during the 1980s with the intention of reducing federal health care costs. *See Zinman v. Shalala*, 67 F.3d 841, 845 (9th Cir. 1995) ("The transformation of Medicare from the primary payer to the secondary payer with a right of reimbursement reflects the overarching statutory purpose of reducing Medicare costs."); *Provident Life & Accident Ins. Co. v. United States*, 740 F. Supp. 492, 498 (E.D. Tenn. 1990) ("The intent of Congress in shifting the burden of primary coverage from Medicare to private insurance carriers was to place the burden where it could best be absorbed."). In a nutshell, the MSP declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds. Consequently, Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer.

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 874-75 (11th Cir. 2003). Conditional payments made by Medicare may be recovered either by the United States or privately, *see supra* n.2, but in either case the interest being protected is the financial well-being of the Medicare program, i.e., that of taxpayers generally, not of any particular individual.

Under these circumstances, the instant matter falls within the second category of

cases recognized by the Supreme Court in *Spokeo*, "where there is a 'bare' procedural violation that does not [fall within the first category], in which case a plaintiff must allege 'additional harm beyond the one Congress has identified.'" *Macy*, 897 F.3d at 756 (quoting *Spokeo*, 136 S.Ct. at 1549). In an attempt to show "additional harm," plaintiff asserts that "the regulatory burden imposed on [the Estate] to obtain payment from Liberty Mutual is sufficient to satisfy the injury-in-fact element of standing." Pl.'s Br. at 21, PageID.5405. But there is no regulatory burden in this case because plaintiff was not required to bring suit to coerce defendant to reimburse Medicare. Her decision to do so was voluntary, motivated presumably by the incentive of the double damages provision of the MSPA. Plaintiff also points to the attorney fees and costs she has incurred in suing defendant in this Court and in state court. *See id.* at 6 and Exs. 3 and 4, PageID.5390 and 5428-5433. But to the extent any of those expenses were incurred in pursuing the MSPA claim, plaintiff incurred them voluntarily in hopes of recovering double damages under that statute. These expenses cannot be used to show "an invasion of a legally protected interest which is . . . concrete and particularized," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), since otherwise this element of standing could always be established by any litigant who has incurred such expenses regardless of the nature of the underlying claim.

In short, the Court concludes that plaintiff lacks standing in this matter because she has failed to demonstrate the injury-in-fact element of standing. That is, plaintiff has not shown that the Estate has been personally and concretely affected by defendant's failure to pay the medical expenses at issue in this case when plaintiff first demanded that it do so. Those expenses were conditionally paid by Medicare, and defendant has committed to reimburse Medicare upon receiving

11

a final bill. Plaintiff has not shown that the Estate "suffered an injury because [defendant] has failed to pay," *Gucwa,* 731 F. App'x at 414, either financial or otherwise. Accordingly,

IT IS ORDERED that Count III of the complaint is dismissed for lack of jurisdiction, as plaintiff lacks standing.

IT IS FURTHER ORDERED, alternatively, that as to Count III plaintiff's motion for partial summary judgment is denied and defendant's motion for partial summary judgment is granted.

|  |  |
|---|---|
| Dated: June 25, 2019<br>       Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE |